IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Angela M. Vaughn, #313443 | ) | C/A No. 5:14-04758-DCN-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Angelia Rawski, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Angela M. Vaughn ("Petitioner") is a state prisoner, and her counsel of record filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on Petitioner's behalf. ECF No. 1 at 15. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Respondent's Return and Motion for Summary Judgment. ECF Nos. 8, 9. On March 5, 2015, the court advised Petitioner to file a Response to Respondent's Summary Judgment Motion if she wished to pursue her case. ECF No. 10. On April 1, 2015, after receiving two extensions, Petitioner's counsel filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 16. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 8, be granted.

I.      Background

Petitioner is currently incarcerated in the Leath Correctional Institution ("LCI") of South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2004, Petitioner was indicted at the March term of the Anderson County Grand Jury for murder (2004-GS-04-748)

and possession of a firearm during the commission of a violent crime (2004-GS-04-749). ECF No. 9-3. Attorney Robert Gamble represented Petitioner in a jury trial that convened from January 17-19, 2006, Assistant Solicitor Catherine Townsend represented the State. App. 1.[1] Petitioner was tried before the Honorable Alexander Macaulay. *Id.* After the trial, the jury found Petitioner guilty of both charges, and Judge Macaulay sentenced Petitioner to 30 years imprisonment for the murder conviction and a concurrent five years imprisonment for the possession of a firearm conviction. App. 359; 376.

Attorney Gamble timely sought a direct appeal of the convictions and sentence on Petitioner's behalf. ECF No. 9-4. Michael Barcroft, Esq. represented Petitioner on appeal and briefed the following three issues pursuant to *Anders v. California*, 386 U.S. 738 (1967):

> I. Whether the trial judge erred in allowing testimony of an alleged threat to the victim made by the defendant made nearly two months before his death.
> II. Whether the trial judge erred in allowing hearsay testimony from the victim's coworkers.
> III. Whether the trial judge erred in failing to grant a directed verdict of acquittal where there was insufficient evidence of guilt.

ECF No. 9-5. On March 12, 2008, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted Attorney Barcroft's motion to be relieved as counsel. ECF No. 9-6. On March 31, 2008, the South Carolina Court of Appeals issued a Remittitur. ECF No. 9-7.

II.     Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on July 18, 2008 (2008-CP-04-02319). App. 377-401. Petitioner asserted the following allegations, recited verbatim, regarding her claims:

> a)  Ineffective assistance of counsel.

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from her sentence and conviction, and her claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF Nos. 9-1, 9-2, and 9-3 in this habeas matter.

b) Prosecutorial Misconduct.
c) Denial of Due Process.

App. 379. Petitioner filed an "Attachment" to her PCR application in which she outlined 26 ways her trial counsel was ineffective. App. 385-94. Additionally, Petitioner elaborated on grounds b) and c) in the attachment. *See id.* Assistant Attorney General Gregory P. Jones filed a Return on behalf of the State. App. 402-06. A PCR hearing convened on June 15, 2010, before the Honorable R. Lawton McIntosh. App. 407-84. Petitioner was present and represented by Mary McCormac, Esq.; A. West Lee, Esq. appeared on behalf of the State. *Id.* Petitioner, trial counsel Gamble, and Petitioner's daughter, Nicole Mosher, testified during the hearing. *See id.* In an Order filed December 15, 2011, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony presented at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).

> In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

> The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

> Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient.

Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625 (citing Strickland). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625.

*Ineffective Assistance of Counsel*

Applicant alleges trial counsel was ineffective in several areas of his representation, including a failure to investigate, prepare and properly present a battered woman's syndrome defense, failure to request a change of venue based on pre-trial publicity and failure to object to the introduction of crime scene photographs at trial.

<u>Failure to Investigate/Prepare/Present Battered Woman Syndrome Defense</u>

Applicant's first and most vehemently stressed allegation at the PCR hearing was that counsel was ineffective in failing to investigate, prepare and properly present a Battered Woman's Syndrome defense for Applicant at trial. At the hearing, Applicant alleged she was had been (sic) the victim of physical, sexual and verbal abuse for the larger portion of her life, spanning from her adolescence through several different boyfriends, including the victim in this case, Ronald Grant ("Grant"). Applicant went on to depict the details of the various, ongoing acts of abuse that she had endured over her lifetime, ranging from verbal altercations, to psychological control, to physical beatings from her many abusers. She stated that during her relationship with Grant, he controlled the clothing she wore, limited her interactions with friends and family, hit her with a paddle during sex, and frequently made threats to her, including telling her at one point that "[he] should just kill her". Applicant went on to say she had called 911 several times during the course of their relationship due to his violent behavior, adding that the police made him leave the house on a few of those occasions but that he usually returned home shortly thereafter. She further testified she had suffered from depression and bi-polar disorder for the majority of her life, as well as from post-traumatic stress disorder stemming from her childhood sexual abuse. Applicant contends that, had counsel properly investigated and researched her long history of abuse and mental health issues, he would have been able to present sufficient evidence, including several witnesses, to convince the jury that she suffered from Battered Woman's Syndrome, thereby changing the outcome at trial.

Counsel testified at the hearing that he has been a practicing law (sic) for roughly forty-five (45) years including over fifteen years consecutively as a public defender, during which time he has tried two-hundred and thirty four (234) murder cases. He went on to say that he first met with Applicant in November of 2003, and numerous times thereafter, to discuss the charges she was facing. Counsel stated that during the course of those meetings, he learned of the prior sexual, physical and verbal abuse encountered by Applicant over her lifetime, as

4

well as Applicant's history of depression and bi-polar disorder. Counsel went on to say he was also aware of the victim, Grant's, history of domestic violence against Applicant including two prior arrests stemming from altercations between the two. Counsel testified that he started preparing a Battered Woman's Syndrome defense to be used at trial from the very outset of his representation, despite it being a fairly new type of defense at the time. While preparing this defense, counsel said, he arranged for Applicant to have an evaluation done by the "sole expert in South Carolina" on Battered Woman's Syndrome at the time, Dr. Verona. Counsel went on to say after the evaluation was done, Dr. Verona called counsel to give him the results, stating she could not find that Applicant suffered from Battered Woman's Syndrome. Counsel testified Applicant was also evaluated by Dr. Pam Crawford at the South Carolina Department of Mental Health shortly thereafter, who shared the opinion that Applicant did not suffer from the syndrome. Counsel stated that based on the results of the evaluations, he would not have been able to back up a Battered Woman's Syndrome defense, and therefore he pursued the one defense that Applicant had primarily maintained throughout their discussions, which was self-defense.

Counsel stated that based on the evidence and facts, it became apparent to him early in his representation that his trial strategy "had to be" self-defense. He stated that, although the path of the bullet troubled him as it seemed to suggest the victim was sitting down when he was shot, he sought to controvert this evidence by asserting the victim was in fact leaning forward when he was shot, in the process of lunging for the gun and/or at Applicant. Counsel additionally testified that he presented testimony from one of Applicant's neighbors who had witnessed a previous altercation between victim and Applicant where the victim was attacking Applicant in the garage. Applicant finished by stating that because the Battered Woman's Syndrome defense was brand new at the time of this trial, and there was a lack of evidence to back up such a defense, he decided it would be better to try to keep the issue simple and present a theory of self-defense which is a defense that "everybody knows" and is familiar with.

Based on the testimony and a thorough review of the record, I find Applicant has failed to carry her burden in proving counsel was ineffective in this regard. Additionally, this Court finds counsel's testimony to be credible. Despite Applicant's history of abuse and mental health issues, Applicant underwent two independent mental evaluations, neither of which were able to establish Applicant suffered from Battered Woman's Syndrome. Based on these evaluations and counsel's review of the case, counsel made the tactical decision to pursue a self-defense strategy, a decision which counsel indicates Applicant agreed with. Counsel adequately and reasonably prepared this strategy for trial, and subsequently presented sound evidence at trial in furtherance of that theory. Counsel properly investigated the case and reviewed all relevant materials extensively in preparation for trial, including the two incident reports from Applicant's prior 911 phone calls regarding victim's abuse, several incident reports stemming from abuse by Applicant's prior boyfriends, Applicant's

previous psychiatric reports, the victim's autopsy report, and Applicant's statements to police. Counsel also testified he spoke with the investigating officer informally several times about the case and interviewed several witnesses during the course of his investigation. In addition to the testimony of Applicant at trial, counsel presented the testimony of two additional witnesses, introduced the victim's prior criminal domestic violence charges stemming from altercations with Applicant, and adequately cross-examined that state's witnesses to call into question their theory of the case.

Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). Here, counsel clearly articulated a valid strategic reason for choosing the trial strategy presented at trial. Applicant has failed to show that counsel was deficient in that choice. Further, I find counsel took reasonable and diligent steps to implement the strategy at trial. Therefore, I find counsel (sic) has failed to prove she received ineffective assistance of counsel, or that she was prejudiced by any alleged deficiency in this regard. Accordingly, this allegation is denied and dismissed.

Change of Venue

Applicant contended counsel was ineffective in failing to request a change of venue from Anderson because she had been "prejudicially publicized" by TV and newspaper outlets during the pendency of the charges. Applicant testified that based on this media, she was "found guilty before [she] ever got a trial."

I find Applicant has failed to prove counsel was ineffective in this regard. A motion for change of venue is addressed to the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion. State v. Caldwell, 300 S.C. 494, 388 S.E.2d 816 (1990). Applicant failed to present any evidence that such media outlets did in fact have news releases about her case that counsel should have relied upon in making a motion for change of venue. Therefore, Applicant has failed to prove counsel acted unreasonably or that his representation was deficient in this regard. Additionally, Applicant has also failed to prove resulting prejudice from this case being heard in Anderson County in light of these alleged media releases. It is the defendant's burden to demonstrate actual juror prejudice as a result of news accounts of the defendant's case. State v. Owens, 293 S.C. 161, 35 S.E.2d 275 (1987); See also Caldwell, supra. Applicant has failed to set forth with any specificity when these releases were made, what the alleged news releases said, whether any jurors saw the releases, or whether any actual juror prejudice resulted from the releases. Accordingly, this allegation is without merit and therefore must be denied and dismissed.

Failure to Object to Introduction of Crime Scene Photographs

Applicant also briefly alleged counsel was ineffective in failing to object to the introduction of several crime scene photographs that did not accurately depict the crime scene. Specifically, Applicant alleged there were two photos that were inconsistent in showing the location of victim's body in relation to the furniture in the house. Applicant testified she had never seen the pictures prior to their introduction at trial and therefore never had the opportunity to discuss the issues with counsel. Counsel was not questioned about the photos and therefore did not present any testimony at the hearing on the issue, but the trial transcript reflects no objection was made to the introduction of the photos.

I find that while counsel did not present any testimony at the hearing to contradict Applicant's allegation in this regard. Applicant has failed to establish counsel acted unreasonably in this regard, or that she suffered prejudice as a result of his failure to object to the photos. "The relevancy, materiality and admissibility of photographs are matters within the sound discretion of the trial court." State v. Martucci, 380 S.C. 232, 669 S.E.2d 598 (S.C. Ct. App. 2008). "Admitting photographs which serve to corroborate testimony is not an abuse of discretion." Id. at 249. "Normally it is sufficient to justify admittance of photographs into evidence if a person familiar with the scene can say the pictures truly represent the scene involved." State v. Campbell, 259 S.C. 339, 191 S.c.2d 770 (S.C. 1972). At trial, Crime Scene Investigator Mark Coyle ("Coyle") was called to testify as to his findings upon arriving at the crime scene. As the person who took the crime scene photographs, the photos were introduced to corroborate Coyle's testimony as to his findings. Coyle was able to testify to the authenticity and accuracy of each of the photos, and was available for cross-examination by Applicant's attorney. Coyle individually described what each photo depicted, as well as the location and angle each picture was taken from during the course of his testimony. Therefore, counsel was not unreasonable in not objecting to the introduction of these photographs as there was (sic) no solid grounds upon which to base an objection. Further, Applicant has failed to show how she was prejudiced as a result of these photos being introduced. Upon cross-examination, counsel was able to elicit testimony from one of the state's witnesses that it was possible Grant was not sitting down during the shooting, but rather lunging towards Applicant, bolstering Applicant's self-defense theory. These photographs in no way diminished Applicant's ability to prove her defense theory, and had no substantial effect on the outcome of the case. Therefore, I find counsel was not ineffective in this regard.

*Conflict of Interest*

Applicant also alleged counsel was ineffective in failing to move to recuse himself from representation where a conflict of interest existed. Specifically, Applicant testified counsel had previously represented the victim, Ronald Grant, on a set of drug charges in the late 1980's and, because of that representation, a conflict existed sufficient to warrant his recusal. Applicant went on to say counsel never offered to recuse himself nor informed her that she could request such.

7

Applicant conceded that she was aware of counsel's prior representation of Grant before the start of trial, but alleged because of her lack of legal knowledge, she was unaware that she could request to have counsel removed from her case.

Counsel testified he was unaware of any alleged conflict of interest arising from prior representation of Grant as his former associate, Fletcher Johnson, handled all of the cases involving drugs. Counsel went on to say he was in no way involved in Johnson's previous representation of Grant and had no knowledge that Johnson had ever undertaken such representation. Counsel went on to say any representation by Johnson in 1989 of Grant would not have affected his ability to represent Applicant in this matter, and finished by stating he did not see any conflict of interest regardless as the previous representation was on a matter separate and distinct from these charges.

The mere possibility of a conflict of interest is insufficient to challenge a criminal conviction. Langford v. State, 310 S.C. 357, 426 S.E.2d 793 (1993). "The Rules of Professional Conduct have no bearing on the constitutionality of a criminal conviction." Id. at 360, 795. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Duncan v. State, 281 S.C. 435, 438, 315 S.E.2d 809 (1984). The Applicant must show that his attorney actually owed duties to a party whose interests were adverse to the Applicant. Id; Thomas v. State, 346 S.C. 140, 551 S.E.2d 254 (2001). Applicant has failed to prove such is this case in this regard. Counsel, whose associate had represented victim nearly seventeen (17) years previously on wholly unrelated charges, testified he was entirely unaware of any prior interaction with victim at the time of Applicant's 2006 trial and went on to say that even had he been aware, it would in no way have affected his ability or duty to zealously represent Applicant on these charges. Applicant has failed to show how Fletcher Johnson's representation of victim in 1989 on drug charges affected counsel's performance in this matter. In fact, based on Applicant's testimony, she was fully aware of Johnson's representation prior to the start of trial and proceeded with counsel as her attorney anyway, thereby waiving any alleged potential conflict. Therefore, this allegation is without merit, and must be denied and dismissed.

Based on the facts above, I find that Applicant did not prove by a preponderance of the evidence that counsel was ineffective in his representation. As discussed above, the Applicant has failed to carry her burden in this action. Therefore, this Court finds that the application must be denied and dismissed in its entirety.

CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his (sic) application. Therefore, this application for post

conviction relief must be denied and dismissed with prejudice. Except as discussed above, this Court finds that the Applicant failed to raise any other allegations cognizable in PCR at the hearing and has, thereby, waived them. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. <u>Janasik v. Fairway Oaks Villas Horizontal Property Regime</u>, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." <u>Lyles v. BMI. Inc.</u>, 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issue (sic) at the hearing indicates a voluntary and intentional relinquishment of his (sic) right to do so. Therefore, any and all remaining allegations are denied and dismissed.

App. 491-500. PCR Counsel filed a Notice of Appeal on Petitioner's behalf, and Appellate Defender Susan B. Hackett filed a Petition for Certiorari. ECF Nos. 9-9, 9-10. Therein, Petitioner presented the following issues for review:

I.    Trial counsel's failure to investigate, prepare, and present evidence of battered spouse syndrome in support of Petitioner's claim of self-defense violated Petitioner's right to the effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

II.    The post-conviction relief judge erred as a matter of law in finding proffered testimony by Petitioner concerning her history of verbal, physical, and sexual abuse was not relevant to the proceedings in light of clear statutory authority and abundant case law governing the admissibility of such evidence.

ECF No. 9-10 at 3. Assistant Attorney General Walt Whitmire filed a Return on behalf of the State. ECF No. 9-11. After the case was transferred, the South Carolina Court of Appeals denied the petition, and issued the Remittitur on May 23, 2014. ECF Nos. 9-12, 9-13. This federal habeas Petition followed and was filed on December 16, 2014. ECF No. 1.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in her federal Petition for a Writ of Habeas Corpus, quoted verbatim:

GROUND ONE: Ineffective assistance of trial counsel.
Supporting Facts: As the testimony at the post conviction relief heading (sic) demonstrates, the defendant has a long history of abuse, both as a child and as an

adult. Trial counsel only had the defendant examined by a professoinal (sic) retained by the State of South Carolina. He never had the defendant examined by an independent professional to determine if the defendant qualifies as a battered spouse or partner. ECF No. 1 at 5.

GROUND TWO: Trial counsel failed to present evidence as to the parole eligibility of the Petitioner under S. C. Code § 16-25-90.
Supporting Facts: As developed at the Post conviction relief hearing, the Petitioner has a long history of abuse both as a child and as an adult. Trial counsel never advised Petitioner she would be eligible for parole under S. C. Code § 16-25-90. Petitioner is infomred (sic) and belives (sic) that her personal history would have made her parole eligible if trial counsel had presented the proper argument. *Id.* at 6.

GROUND THREE: Failure of post conviction relief counsel to effectively represent Petitioner at the Post Convcition (sic) Relief Hearing
Supporting Facts: At the Post Conviction Relief hearing all counsel for Petitioner did was have the Petitioner, trial counsel of the Petitioner and the daughter of the Petitioner testify. Post Conviction Relief Counsel never tried to obtain the services of an expert who could have developed her defense of being a battered woman. Post Conviction Relief counsel also failed to deveop (sic) through the testimony of other lay witnesses that Petitoner (sic) had in fact been a battered woman. PCR counsel also failed to obtain the services of an expert who could have established that the petitioner was suffering from battered woman's syndrone (sic). *Id.* at 8.

GROUND FOUR: Failure of appellate counsel, to adequately brief the issue of the hersay (sic) statements of the deceased.
Supporting Facts: During the trial testimony was given that the deceased said he was planning on leaving the petitioner. Trial counsel made a proper objection to the testimony. Appellate counsel submitted an Ander's (sic) brief and only gave the issue a very cursory treatment. *Id.* at 10.

B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that

assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.      Generally

Because Petitioner filed her Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of her claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an

unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

### a.  Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as

> determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.  Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668

(1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.  Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.  Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a

procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

18

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

## IV. Analysis

### A. Procedurally Barred Grounds

As an initial matter, Respondent maintains that Petitioner's second, third, and fourth arguments are procedurally barred from habeas review. ECF No. 9 at 10-17. In Response, Petitioner argues that the Supreme Court case of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), excuses any procedural default for her habeas grounds. ECF No. 16 at 1.

In *Martinez*, the Supreme Court reviewed a case where an Arizona state prisoner petitioned for writ of habeas corpus. *Id.* at 1310. Arizona, like South Carolina, requires "claims of ineffective assistance at trial to be reserved for state collateral proceedings." *Id.* at 1314. Martinez's attorney in his state collateral proceeding filed a notice for PCR, however, she later

filed a statement "asserting she could find no colorable claims at all." *Id.* Ultimately, Martinez's

PCR action was dismissed. *Id.* Later, with the assistance of new PCR counsel, Martinez filed a

second notice for PCR where he raised several ineffective-assistance-of-trial-counsel claims. *Id.*

However, the Arizona trial and appellate courts denied Martinez relief because he failed to raise

his second PCR claims in the first PCR. *Id.* In his district court habeas petition, Martinez raised

his ineffective-assistance-of-trial-counsel claims. *Id.* There, he argued that he should overcome

any procedural hurdles related to these claims because his first PCR counsel was ineffective in

failing to raise any claims in the first PCR action.  *Id.* at 1314-15.

There, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review

collateral proceedings may establish cause for a prisoner's procedural default of a claim of

ineffective assistance at trial." *Id.* at 1315. In its analysis, the *Martinez* Court recognized that

*Coleman v. Thompson*, 501 U.S. 722, 754 (1991), held:

> [A]n attorney's errors during an appeal on direct review may provide cause to
> excuse a procedural default; for if the attorney appointed by the State to pursue
> the direct appeal is ineffective, the prisoner has been denied fair process and the
> opportunity to comply with the State's procedures and obtain an adjudication on
> the merits of his claims.

*Id.* at 1317. If a state requires a prisoner to raise ineffective assistance of trial counsel in a

collateral proceeding, the *Martinez* Court determined a prisoner may establish cause for a default

of an ineffective-assistance claim in the following two circumstances:

> [1] where the state courts did not appoint counsel in the initial-review collateral
> proceeding for a claim of ineffective assistance at trial [and 2] where appointed
> counsel in the initial-review collateral proceeding, where the claim should have
> been raised, was ineffective under the standards of *Strickland v. Washington,* 466
> U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a
> prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-
> counsel claim is a substantial one, which is to say that the prisoner must
> demonstrate that the claim has some merit.

*Id.* at 1318.

20

Grounds Two, Three, and Four are admittedly procedurally defaulted from habeas review, but Petitioner maintains that *Martinez* establishes "cause" for the default. However, to overcome the default, *Martinez* requires Petitioner to demonstrate that the underlying ineffective-assistance-of-counsel claim is substantial or has merit. *See id.*

    1.   Ground Two-Parole Eligibility and South Carolina Code Section 16-25-90

Petitioner argues that trial counsel "failed to present evidence as to the parole eligibility of Petitioner under S. C. Code § 16-25-90." ECF No. 1 at 7. Specifically, Petitioner maintains that she "has a long history of abuse both as a child and as an adult" and she believes her personal history would have made her eligible for parole under S.C. Code § 16-25-90 if trial counsel had presented proper argument. *Id.* In her Petition she acknowledges that the issue of parole eligibility was not raised by either trial counsel or PCR counsel and asserts "[a]lso ineffectiveness of appellate counsel." ECF No. 1 at 12. Respondent argues that the "trial and PCR court records fail to support a basis for either trial or PCR counsel's ineffectiveness on the matter of parole eligibility." ECF No. 9 at 21. As an initial matter, Petitioner appears to have abandoned Ground Two by failing to address it in response to Respondent's Motion for Summary Judgment. However, for the reasons that follow, the undersigned finds that Petitioner failed to demonstrate she is entitled to federal habeas relief on this ground.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court articulated a two-prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance

21

was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.

Here Petitioner asserts that trial counsel failed to advise her that "she could be eligible for parole[2] under S.C. Code § 16-25-90." Section 16-25-90 provides:

> Notwithstanding any provision of Chapters 13 and 21 of Title 24, and notwithstanding any other provision of law, an inmate who was convicted of, or pled guilty or nolo contendere to, an offense against a household member is eligible for parole after serving one-fourth of his prison term when the inmate at the time he pled guilty to, nolo contendere to, or was convicted of an offense against the household member, or in post-conviction proceedings pertaining to the plea or conviction, presented credible evidence of a history of criminal domestic violence, as provided in Section 16-25-20, suffered at the hands of the household member.

Under the express terms of Section 16-25-90 Petitioner could have been eligible for parole only if there was "credible evidence" that she suffered domestic abuse at the hands of the victim. In *State v. Grooms*, 540 S.E.2d 99 (S.C. 2000), the Supreme Court of South Carolina concluded the trial court did not err by holding that section 16-25-90 requires the defendant to prove by a preponderance of the evidence that she suffered a history of criminal domestic violence ("CDV") at the hands of her victim. 540 S.E.2d at 102. However, "mere production of evidence does not automatically result in earlier parole eligibility; instead, the defendant must persuade the judge by presenting proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *State v. Blackwell-Selim*, 707 S.E.2d 426, 428 (S.C. 2011). "[U]se of the term 'credible evidence' indicates the legislature intended the defendant's evidence to be, in fact, trustworthy, not simply plausible." *Id.*

---

[2] To the extent Petitioner is asserting that she is eligible for parole, that is a matter outside of this court's purview as "parole eligibility is a question of *state* law therefore is not cognizable on federal habeas review." *Ramdass v. Angelone*, 187 F.3d 396, 407 (4th Cir. 1999) (emphasis in original).

Before the judge sentenced Petitioner her counsel brought to the judge's attention that Petitioner and the victim had a "stormy relationship" and numerous calls were made to the police that were not acted upon. App. 360-61. Petitioner informed the judge about "numerous 911 calls," and about "bruises on [her] arms, on [her] legs, [her] neck and gashes on [her] head that did not come out it witness testimony. App. 362. The judge was given the opportunity to review photographs of Petitioner taken the night she pressed charges against the victim for CDV. *Id.* Although the victim was charged with CDV, he was killed before his case was tried. App. 260-61; 435-440. At the PCR hearing, although Petitioner testified as to physical abuse from the victim, App. 428-29, 437-38, she presented no evidence other than her own of the victim's abuse. Her daughter testified about the victim's aggressive behavior and about seeing bruises on Petitioner, but did not testify that she ever saw the victim strike Petitioner. App. 471-73. Petitioner's trial counsel testified that both Petitioner's expert and the State's expert "found no evidence to support battered woman syndrome" and that he did not present evidence supporting the elements of battered women's syndrome at trial because he "couldn't back it up." App. 460-61. Petitioner did not present an expert to testify at the PCR hearing that she had battered women's syndrome. App. 480.

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. at 105. In this case it is arguable that a reasonable attorney, based on the lack of credible evidence, would not raise section 16-25-90.

Even if Petitioner could successfully prove her trial counsel acted unreasonably, she still must prove that his unreasonable performance was prejudicial. Petitioner offers no such evidence. Specifically, she has failed to demonstrate a reasonable probability that had trial counsel raised section 16-25-90 to the trial judge, he would have determined it to be applicable. Indeed, the trial judge was made aware of Petitioner's allegations of abuse by the victim and imposed the sentence based on her murder conviction. Accordingly, Petitioner cannot show sufficient prejudice from her attorney's failure to request consideration of Section 16-25-90 and her claim of ineffective assistance of counsel is without merit.

Furthermore, a federal court may not grant habeas relief unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28  U.S.C.A. § 2254(d). Plaintiff has not provided "any Supreme Court precedent to establish that her trial counsel's representation was constitutionally deficient for failing to present evidence or advise her regarding parole eligibility under S.C. Code section 16-25-90. *Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 60 ("We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel . . . .")).

To the extent Petitioner seeks to invoke *Martinez* to allege her PCR counsel was ineffective for failing to raise section 16-25-90, under the first requirement of the *Martinez* exception, Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the

claim has some merit." *Gray v. Pearson*, 526 F. App'x 331, 333 (4th Cir. 2013). Therefore, Petitioner must show that there is a reasonable probability that she would have received relief on her claim of ineffective assistance of trial counsel in her application for PCR if that claim had been raised, and that her PCR counsel's failure to raise the claim during her PCR proceeding was objectively unreasonable. *Ford v. McCall*, No. 8:12–2266-GRA, 2013 WL 4434389, at \*11 (D.S.C. Aug. 14, 2013) (citing *Horonzy v. Smith*, No. 11–234, 2013 WL 3776372, at \*6 (D. Idaho Sept. 12, 2012) ("The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."). Applying *Martinez* to the record and Petitioner's Ground Two, the undersigned finds that Petitioner has failed to show she is entitled to relief under this standard. Petitioner cannot demonstrate a substantial claim of ineffective assistance of trial counsel; that PCR counsel was objectively unreasonable in failing to raise it; and that, but for PCR counsel's errors, there is a reasonable probability that Petitioner would have received relief on her claim of ineffective assistance of trial counsel.

Because Petitioner cannot demonstrate that her ineffective assistance of trial counsel claim was substantial and that PCR counsel was ineffective under *Strickland* in failing to raise the claim, she cannot establish cause under *Martinez* excusing the procedural default of this claim.

2. Ground Three: Ineffective Assistance of PCR Counsel

Petitioner contends that she was denied effective assistance of PCR counsel because PCR counsel only called Petitioner, her trial counsel, and Petitioner's daughter to testify. ECF No. 1 at

5. Furthermore, Petitioner argues that PCR counsel failed to "obtain the services of an expert who could have developed her defense of being a battered woman" or develop through lay witnesses that Petitioner was a battered woman. *Id.* Respondent maintains that "Petitioner's basic allegation of post-conviction counsel error is clearly without factual support and does not promote cause to excuse the procedural default otherwise attaching to this claim." ECF No. 9 at 25.

Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752. However, in *Martinez* the United States Supreme Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance *at trial*." *Martinez*, 132 S. Ct. at 1315 (emphasis added). Thus, *Martinez* does not aid Petitioner in excusing her procedural default of a claim unrelated to ineffective assistance of trial counsel.

Assuming Petitioner demonstrated the requisite cause, she failed to demonstrate that her claim has any merit to overcome procedural hurdles for habeas review of Ground Three. In reviewing Petitioner's claim that she was denied effective assistance of trial counsel, the PCR court specifically found that trial counsel's performance was not deficient. App. 494-96. Additionally, the PCR court found that trial counsel made a tactical decision in pursuing self-defense. App. 495. Retaining an expert at the PCR level to evaluate Petitioner and increasing the number of witnesses called to testify during the PCR hearing would only be relevant to the prejudice prong of the *Strickland* test. Neither an expert nor witnesses could have demonstrated trial counsel's deficiency or lack of tactical strategy under the first prong of the *Strickland* test. *See supra* section C1.  Therefore, any alleged error of Petitioner's PCR counsel was harmless,

and the undersigned finds that this claim lacks requisite merit for review. Therefore, the undersigned recommends dismissing Ground Three based on Petitioner's failure to demonstrate prejudice and overcome the procedural default. *See Martinez*, 132 S. Ct. at 1320.

      3.  Ground Four: Inadequate Appellate Counsel on Briefing Hearsay Admissibility

In her Petition, Petitioner maintains that appellate counsel failed to adequately brief the issue of the hearsay statements of the deceased. ECF No. 1 at 10. Petitioner maintains that her trial counsel "made a proper objection to the testimony" that the victim said he was planning on leaving Petitioner. *Id.* Petitioner argues that appellate counsel submitted an *Anders* brief and only gave the issue a very cursory treatment. *Id.* Other than arguing that Petitioner's hearsay argument is procedurally defaulted, Respondent argues that Petitioner's appellate counsel "cannot be found to have acted deficiently where he informed his client of the right to appeal and pursued three issues on appeal. . . ." ECF No. 9 at 28. Further, Respondent maintains that appellate counsel's performance was not deficient and did not prejudice Petitioner. *Id.* at 28-29. In her Response brief, Petitioner maintains that PCR counsel was ineffective for failing to raise the issue of ineffective assistance of trial and appellate counsel for counsels' failure to argue that hearsay testimony from three witnesses was inadmissible under *Crawford v. Washington*, 541 U.S. 36 (2004). ECF No. 16 at 4.

In Petitioner's *Anders* brief, appellate counsel argued that the trial court erred in allowing hearsay testimony from the victim's coworkers. ECF No. 16-1 at 4. There, appellate counsel maintained that four of the victim's coworkers testified that the victim told them he was going to leave Petitioner the morning after he was killed. *Id.* at 6. Without specifically referencing the *Crawford* opinion, appellate counsel argued that these statements were hearsay, and in a criminal case a defendant has a constitutional right to confront the witnesses. *Id.* However, as previously

noted, the South Carolina Court of Appeals dismissed Petitioner's appeal in an unpublished opinion. ECF No. 9-6.

During Petitioner's criminal trial, four witnesses were called by the State to testify regarding statements made by the victim prior to his death. *See* App. 175-193. Specifically, during an in-camera examination, one witness testified that she heard the victim "joke" that Petitioner "was probably sitting at home with a bullet with his name on it." *Id.* at 177. Additionally, the witness testified that the victim "talked about leaving [Petitioner] the next day. . . ." *Id.* at 178. Over trial counsel's objection that this testimony was inadmissible hearsay, the trial court allowed the testimony. *Id.* at 178-79; 182; 191. Specifically, the trial court found that:

> The statement that he was planning to leave [Petitioner] the next day, that would be admissible under Rule 803, subparagraph 3, then existing state of mind as to intent of plan or design, but not the present sense impression, nor may the witness state anything about why or any belief that the declarant, being the deceased in this case, had. So, he can only state that he heard the decedent say that he was planning to leave the next day or something to that effect. But no reason. Cannot state any cause for it or anything else.

App. 179. Both trial counsel and appellate counsel argued that the testimony given was inadmissible hearsay. Because these arguments were raised to the court's attention, Petitioner has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Furthermore, the *Crawford* opinion is distinguishable from the situation in Petitioner's criminal case. *See* 541 U.S. 36. There, the issue was the admissibility of testimony from an unavailable witness under a Washington state-law hearsay exception. *Id.* at 40. Here, the trial court allowed the victim's statement into evidence under Rule 803(3) of the South Carolina Rules of Evidence concerning the hearsay exception of "then existing mental, emotional, or physical condition." App. 179. Therefore, neither trial nor appellate counsel was deficient in their failure to specifically mention the *Crawford* opinion

when lodging the objection or in briefing the issue on appeal. Moreover, Petitioner has failed to demonstrate that this alleged deficiency prejudiced the defense or would have changed the outcome of her criminal trial or appeal. As a result, the issue raised in Ground Four is without merit and should be dismissed based on Petitioner's procedural default. *See Martinez*, 132 S. Ct. at 1320; *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

    B.  Miscarriage of Justice Exception

    Petitioner may overcome procedural defaults and have her claims addressed on the merits by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). In order to demonstrate a miscarriage of justice, Petitioner must show she is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors she complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, her claims are procedurally barred from consideration by this court and

should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Grounds Two, Three, and Four.[3]

C. Merits

In Ground One Petitioner alleges ineffective assistance of trial counsel. ECF No. 1 at 5. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1.  Ineffective Assistance of Trial Counsel-Battered Woman's Syndrome Defense[4]

Petitioner maintains she received ineffective assistance of trial counsel because her trial counsel failed to have her examined by an independent professional not just a professional retained by the State of South Carolina and PCR testimony demonstrates Petitioner has a long history of abuse. ECF No. 1 at 5. Respondent argues that the state court reasonably and

---

[3] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Grounds Two, Three, and Four.

[4] "Battered spouse syndrome" and "battered woman's syndrome" are used interchangeably throughout the Appendix. For purposes of this R&R, the undersigned will use the term "battered woman's syndrome" as Petitioner was not married to the victim.

adequately found neither deficient performance nor prejudice resulted from trial counsel's failure to pursue a battered woman's syndrome defense. ECF No. 9 at 15. Moreover, Respondent argues that trial counsel made a tactical decision to pursue self-defense rather than battered woman's syndrome because Petitioner underwent two independent mental evaluations, and neither established that Petitioner suffered from battered woman's syndrome. *Id.* at 15-16. Respondent maintains that trial counsel reasonably presented Petitioner's self-defense theory during her criminal trial. *Id.* at 17. Even assuming trial counsel error, Respondent maintains that Petitioner was not prejudiced. *Id.* at 18-20. In Response, Petitioner argues that battered woman's syndrome was not a relatively new defense when she was tried, contrary to trial counsel's testimony. ECF No. 16 at 1-2. Furthermore, Petitioner argues that battered woman's syndrome is not a separate defense—in other words, trial counsel could have pursued both defenses during her trial. *Id.* at 2.

Battered woman's syndrome is akin to self-defense. *United States v. Williams*, 163 F.R.D. 249, 250 (E.D.N.C. 1995). The battered woman's syndrome "does not excuse criminal conduct because a defendant was incapable of formulating a requisite mental state. Rather, it presumes such mental state to exist but offers a legally recognizable justification for the conduct." *Id.* (citing *United States v. Bell*, 855 F. Supp. 239 (N.D. Ill. 1994)). "[T]he battered woman's syndrome as a self-defense theory has gained increasing support over recent years." *Moran v. Ohio*, 469 U.S. 948, 950 (1984). The battered woman's defense is appropriate when the defendant has been the victim of continuing abuse over a period of time, and the defendant believes she is in imminent danger from which escape is impossible even if the victim is not actively abusing her. *Robinson v. State*, 417 S.E.2d 88, 91 (S.C. 1992). A battered woman suffers from "learned helplessness" as the "repeated batterings, like electrical shocks, diminish the woman's motivation to respond." *Id.* at 90. "This stems from the battered woman's belief that

31

her batterer is more powerful than he actually is, and her fear of retaliation if she summons help. As a result, she ceases trying to escape even when the opportunity to do so is present." *Id.*

In its Order of Dismissal, the PCR court recounted Petitioner's testimony concerning her history of abuse. App. 492-93. There, the PCR court acknowledged that Petitioner "alleged she was had been the victim of physical, sexual and verbal abuse for the larger portion of her life, spanning from her adolescence through several different boyfriends, including the victim in this case, Ronald Grant ('Grant')." App. 493. Furthermore, the PCR court noted Petitioner's testimony of specific acts of abuse by the victim and that the victim controlled certain aspects of Petitioner's life. *See id.* Additionally, the PCR recognized that Petitioner testified that she had to call 911 several times during the course of her relationship with the victim. *See id.*

Thereafter, the PCR court summarized trial counsel's PCR testimony and found that trial counsel testified that he first met with Applicant in November of 2003, and numerous times thereafter. *Id.* Trial counsel testified that he learned of the prior sexual, physical and verbal abuse Petitioner encountered over her lifetime, including the victim's history of domestic violence against Petitioner. App. 493-94. Specifically, concerning battered woman's syndrome, the PCR court found trial counsel testified that:

> [H]e started preparing a Battered Woman's Syndrome defense to be used at trial from the very outset of his representation, despite it being a fairly new type of defense at the time. While preparing this defense, counsel said, he arranged for Applicant to have an evaluation done by the "sole expert in South Carolina" on Battered Woman's Syndrome at the time, Dr. Verona. Counsel went on to say after the evaluation was done, Dr. Verona called counsel to give him the results, stating she could not find that Applicant suffered from Battered Woman's Syndrome. Counsel testified Applicant was also evaluated by Dr. Pam Crawford at the South Carolina Department of Mental Health shortly thereafter, who shared the opinion that Applicant did not suffer from the syndrome. Counsel stated that based on the results of the evaluations, he would not have been able to back up a Battered Woman's Syndrome defense, and therefore he pursued the one defense that Applicant had primarily maintained throughout their discussions, which was self-defense.

*Id.* at 494. Moreover, the PCR court found that Petitioner failed to carry her burden of proving ineffective assistance of counsel because she "underwent two independent mental evaluations, neither of which were able to establish [Petitioner] suffered from Battered Woman's Syndrome." *Id.* Additionally, the PCR court determined that trial counsel "made the tactical decision to pursue a self-defense strategy, a decision which counsel indicates [Petitioner] agreed with." *Id.*

This is not a situation in which trial counsel ignored his client's wishes or wholly ignored a possible defense. Rather, trial counsel met with Petitioner several times and had Petitioner examined by two medical professionals to determine whether battered woman's syndrome should be raised in Petitioner's defense. However, neither medical consultant determined Petitioner suffered from battered woman's syndrome. Though Petitioner correctly maintains that "a defense using Battered Woman's Syndrome supplements self-defense and is not in lieu of" it, this assertion does not negate the fact that trial counsel did not have expert witness testimony establishing the defense. To the extent Petitioner argues that trial counsel was deficient because he should have retained an independent expert to examine Petitioner in addition to the two who already evaluated Petitioner, this argument fails.

The Fourth Circuit has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d 1348, 1352 (4th Cir. 1982). "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing *Goodwin v. Balkcom,* 684 F.2d 794, 805 (5th Cir. 1982), *cert. denied,* 460 U.S. 1098, (1983)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d 1147, 1149–50 (5th Cir. 1978)). Accordingly, the

undersigned finds that trial counsel adequately investigated the viability of a battered woman's syndrome defense and was not deficient under the *Strickland* test.

Moreover, the PCR court held that trial counsel demonstrated sound strategy in deciding to move forward with self-defense and abandoning the battered spouse woman's defense. App. 495-96. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Hamilton v. Warden, Lieber Corr. Inst.*, No. 5:13-2506-MGL, 2015 WL 251243, at *17 (D.S.C. Jan. 20, 2015) (noting that where trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"); *Whitehead v. State,* 417 S.E.2d 530 (S.C. 1992); *see also Dempsey v. State,* 610 S.E.2d 812 (S.C. 2005). The undersigned finds that Petitioner has not shown that counsel was deficient in his choice of tactics.

Additionally, Petitioner has not shown prejudice based on trial counsel's presentation of self-defense and the evidence presented in support of this theory, including testimony regarding Petitioner's history of abuse from the victim. The undersigned finds that the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law because trial counsel reasonably investigated viable trial defenses. Furthermore, Petitioner failed to show that had trial counsel secured an independent medical examiner to evaluate her that the examiner would have come to a different medical opinion than the other two consultants. Furthermore, had trial counsel presented the battered woman's

syndrome defense, Petitioner has failed to show that there is a reasonable probability that the result of her trial would have been different. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the issue raised in Ground One is without merit and should be dismissed.

V.    Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 8, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

May 20, 2015                                     Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**